62b 85
32ap 55
62b 85
36ap590

IN THE MATTER OF THE NEW YORK AND BOSTON RAILROAD COMPANY, petitioning for the appointment of commissioners of appraisal on the lands of Joseph H. Godwin, George H. Peck and Samuel M. Valentine.

The general railroad laws of this State are to be construed harmoniously, as respects their various provisions, and strictly, as to the rights of the parties.

By comforming to the provisions of those laws, corporations may acquire a title in fee to lands necessary for their purposes, against the will of the owners. But corporations must conform to such provisions, before they can acquire any title or rights thereto.

A fair construction of those laws will require a chronological fulfillment of their provisions.

The right to the written notice required by the act of 1871, amending the act of 1853, (*Laws of* 1871. *ch.* 560, § 22,) to be given to the actual occupants of the land over which the route of a proposed railroad is designated on the map and profile filed, of the time and place such map and profile were filed, and that the route designated thereby passes over the lands of such occupants, is a right given to each owner, by the statute, and it is not for a corporation, nor for the court, to deprive him of it.

If the occupant does not take the statutory steps, within fifteen days, to secure a review, or alteration of the route, the route may be considered settled, and his right thereafter to object to its location, as lost.

Such notice to the occupant must be served before applying for the appointment of commissioners of appraisal. Presenting a petition for appointment of commissioners, is not a sufficient compliance with the requirement as to notices.

The motion for the appointment of commissioners of appraisal is a separate proceeding, and independent of the section requiring the service of a written notice of location of the route.

The orderly course is to have the property which is condemned expressly defined and specified in the order appointing the commissioners; and this cannot be done until the owner's right, under section 22, to effect a change in the railroad route, has either lapsed or been exercised.

The preliminary survey under section 28 is to be made before the application for commissioners of appraisal under section 14. And the notice to occupants, under section 22, must be given before the right to proceed under section 14 begins.

Requisites of the map and profile of the route of a proposed railroad which are required to be filed in the county clerk's or register's office, before constructing any part of such road. And the particulars in which the map and profile in this case were held defective.

If a railroad company fails to comply with the necessary pre-requisites for

obtaining the appointment of commissioners of appraisal, it does not secure the right to have the property condemned, against the opposition of its owners.

THE facts of the case are sufficiently set forth in the opinion.

*Porter, Lowrey & Soren,* and *R. W. Van Pelt,* for the company.

*Strong & Shepard,* for the land owners.

GILBERT, J.   The New York and Boston Railroad Company, incorporated under our general laws, seek to acquire title to a route through three certain parcels of land in Yonkers and West Farms, owned and occupied respectively by Godwin, Peck and Valentine, against the consent of the owners, under and by virtue of the provisions of the general railroad laws of this State.   These laws are to be construed harmoniously, as respects their various provisions; and strictly, as to the rights of the parties.   By conforming to the provisions of these laws, corporations may acquire a title in fee to lands necessary for their purposes, against the will of the owners; but such corporations must conform to such provisions, before they can acquire any title or rights thereto.   A fair construction of these laws will require a chronological fulfillment of their provisions.   Under section 28 railroad corporations may enter upon the lands or waters of any person to examine, survey and select the most advantageous route.   Under section 22 they shall, before constructing any part of their road into, or through any county, file a map and profile of the route, certified as directed, in the register's office, (or county clerk's office, as the case may be,) and give written notice to the actual occupants of the land over which the route is designated, of the time and place such map and profile were filed, and that the route passes over the land

of such occupant. (*Laws of* 1871, *ch.* 560.) If such occupant does not take the statutory steps within fifteen days to secure a review, or alteration of the route, the route may be considered settled, and his right thereafter to object to its location, as lost. Under section 14 those corporations may apply, upon ten days' notice, for the condemnation of lands which they have been unable to acquire by agreement with the owner, through the process of the appraisal of the compensation to be paid by the company to the owners and parties interested. The subsequent details of the statutes are omitted for the sake of brevity; the present object being to set forth, in their order, the necessary preliminaries and conditions down to the appointment of commissioners of appraisal, upon which, corporations may become vested with the privilege of invoking the sovereign power of the people to wrest his property from a private owner and transfer it to them by virtue of the right of eminent domain. When this company, the present petitioner, brought these land owners as parties into court, each of them put in verified answers, denying the jurisdictional allegations of the petition. A reference was had, and to the referee's report both parties took exceptions; so that the case comes before the special term upon the original testimony and all the proceedings, each party claiming that a trial has been had, and each endeavoring to secure a judgment in their own favor.

I find, as a matter of fact, that the company have been engaged in constructing their road in Westchester county for a period of fifteen months, and that they have never served the written notice as specifically required by the 22d section of the act. It was, however, contended by the counsel of the company, that it was not necessary to serve that notice before applying for the appointment of commissioners of appraisal, and that the petition itself was a sufficient compliance, as to that notice. Neither of these grounds can be sustained. There is no sentence in the

petition containing the exact notice required, as to the route passing over the land ; and the object of the notice, which is to give the property owner the opportunity to secure a review and change of the route, would be defeated by such a construction.    In the first instance, the company has the right to arbitrarily locate the route ; but the statute then gives the right to the property owner to secure a change of that location, if he can show cause for changing it to the satisfaction of the three persons to be appointed by the court to determine the question.    This right of the property owner may be material and valuable, in view of the manner in which the railroad may cut his property, and affect the highways and other objects in the neighborhood.    At any rate, it is a right given to him by the statute, and it is not for a corporation, nor for the court, to deprive him of it.

The motion for the appointment of commissioners of appraisal is a separate proceeding, and independent of the section requiring the service of the written notice of location of the route ; for it would be absurd either to appoint commissioners to appraise the value of property which could not be definitely described, or to describe property which might not come under appraisal at all; and one of these incongruous conditions would arise, if the motion for the appointment of commissioners could be made before the right of the property owner to a change of route was exhausted.    The orderly course is to have the property which is to be condemned expressly defined and specified in the order appointing the commissioners, and this cannot be done until the owner's right, under section 22, to effect a change in the railroad route, has either lapsed or been exercised.    The numerical order of the sections of the statute, which was insisted upon, is of no consequence. The preliminary survey under section 28, is to be made before the application for commissioners of appraisal under section 14.    A similar necessity requires the notice under

section 22 to be given before the right to proceed under section 14 begins, for otherwise, upon a confirmation of the report of the commissioners, the corporation would become vested with the title to lands which a change of the route would render unnecessary for the uses of a railroad. Another objection raised by the property owners was, that the map and profile of the road filed were deficient.

I find that the profile is not on the map, but on a separate sheet, which does not give the land owners' names; so that only an unnecessarily laborious and scientific measurement could connect and identify the profile with the map at any given parcel of land. The better course would be to follow the suggestion of section 31, subdivision 39, (of the general railroad act of 1850,) and put the profile upon the map; then the profile could be located upon any parcel of ground with facility, and its object, of showing the grade, cut, embankment and slope on every parcel, be at once attained.

I find that the map is not a substantial compliance with the statute. The object of the statute is to secure a public record of the boundaries, location, grade and direction of the railroad, and to enable those interested in the property to be condemned or conveyed, to describe the route by metes and bounds through any and every parcel of land. This the map on file utterly fails to accomplish. The map consists of a sheet on which is laid down only one line, showing the general course of the railroad, but whether this line is an exterior, a center given, or any other certain line, does not appear. The area of land required for the route is nowhere marked. The Harlem river, which is near the route intended to be designated, is nowhere shown. The Spuyten Duyvil and Port Morris Railroad, which is also near it, is not shown. Many of the highways crossed are not laid down. Not one of the property owners could tell, by inspecting the map, where the route

would cross his property. Even the boundaries of towns are not mentioned. The number of the stake-stations differs from those mentioned in the petition. The engineer of the company swore that, with a corps of assistants and his surveying instruments, he could go on the ground and, with the aid of the map, locate the route. But the statute will not subject an interested party to the expense of such proceeding to ascertain the location of the railroad; nor does it intend that the knowledge of the route, before the actual grading and construction of the railroad, shall be locked up in the mysteries of science, or be confined to the learned few. The map should be sufficient, exact, complete, so as to be understood by any plain man. Then it will give him and the public the correct information to which they are entitled. Otherwise it is a snare, and will serve purposes of concealment, rather than elucidation. Railroad companies acquire property for public purposes, and consequently their maps are to be public records, and should be ample and correct in detail. Upon a condemnation, the order of confirmation is to recite the exact boundaries of the real estate, and is to be recorded, and operates as a conveyance of the title. And the map which is made the original basis of such conveyance, on the first application for the appointment of commissioners of appraisal, should be equally accurate and full. This does not at all conflict with the right of a company to alter their route in any part of it under section 23, nor with the mutual right of the company and the land owner to alter, by agreement, the route at any given point; but when the route has been thus changed, and is actually graded, and the railroad constructed, then a new map of the whole is to be prepared and filed, (§ 45;) and, in the meantime, the intended route is to be mapped fully and accurately, and be open to public examination.

That the objection, that the map does not show the extent of land taken, nor anything more than a line indicating

the general direction of the railroad, would be good, *if taken in time*, is intimated by the court in the case 21 *How. Pr.* 434.

That the railroad company must show that the land is covered by the authorized location, is the doctrine in *Hazen* v. *Boston and Maine R. R.* (2 *Gray*, 574,) and in *Stone* v. *Cambridge*, (6 *Cush.* 270.) By the 14th section of the act, the map is to be, or be equivalent to, a survey; which means " the act by which the quantity of a piece of land is ascertained; or the paper containing a statement of the courses, distances and quantity of land." By the same section, the petition is to state that the company "have located their road according to such survey." But the map filed contains no quantities, and is not in any sense equivalent to a survey, and it would consequently be impossible for the company to show that the lands sought to be acquired are covered by the authorized location.

In respect to Valentine's land, the company made him no offer, and made no attempt whatever to agree with him for its purchase. The statute requires this to be done, and only gives the right to proceed *in invitum* when such an attempt has proved a failure.

Therefore, as this company has not complied with the necessary pre-requisites for obtaining the appointment of commissioners of appraisal, it has not secured the right to have the property condemned, against the opposition of its owners.

The proceedings are accordingly dismissed, with costs.

[Kings Special Term, December 4, 1871. *Gilbert*, Justice.]