MATTER OF NEW YORK AND CANADA RAILROAD COMPANY V. GUNNISON, appellant.

*Railroad company — eminent domain — taking gravel bed.*

The acquirement of land by a railroad company, outside of its way, for the purpose of enabling it to obtain gravel therefrom for the construction of the road, *held* not allowable under the statutes relating to eminent domain.

APPEAL from an order of the special term condemning certain lands of George Gunnison, in Crown Point, Essex county, for the purpose of constructing the New York and Canada Railroad.

The ground upon which the application upon which said order was granted, was, the need of gravel to construct other portions of the railroad distant from the property, and the anticipated increase of business at that point demanding room for side-track, switches,

etc. The lands sought, with other lands already acquired, for the railroad, would occupy about eleven acres of said Gunnison's land, claimed by him to be worth $2,000 per acre, lying between the steamboat landing on Lake Champlain and the village of Crown Point. Other facts appear in the opinion.

*Waldo, Tobey & Grover* and *M. Hutchings*, for railroad company.

*R. L. Hand, Matthew Hale* and *D. B. Hill*, for Gunnison.

BOARDMAN, J. From a reading of the appeal papers it is fair to say that the railroad company need and will need additional lands for side tracks and storing cars. Whether the necessity requires the use of the particular lands in controversy is not so clear. Still enough is shown of difficulties and obstructions in other neighboring localities to lead to the conclusion that no other property is so available or could be rendered so useful at so small an expense as these lands of Gunnison. If so, the selection of proper grounds for these and other necessary purposes are very much in the discretion of the managers, if exercised in good faith.

But the railroad company claims the right and indicates an intent to use a portion of the lands of which it seeks to acquire the title for the purpose of taking therefrom gravel to ballast the road for many miles to the south of Crown Point. It appears that this land is mostly made up of fine quality of gravel suitable for such purpose, and that no suitable gravel can be obtained for fifteen miles south of it. One of the objects for which such land is necessary to said company is to excavate and carry away this gravel for ballast. The right of eminent domain is harsh in its application to individual rights. It is given for the public advantage and to accomplish a public purpose. To accomplish such purpose the railroad company is allowed to take private property upon just compensation. Whatever is essential and indispensable to the construction, maintenance or running of the road, is allowed to be taken. What the company acquires is not a fee simple to the lands, not an absolute right to use them, irrespective of title and interest remaining in the individual, but a right of way and the right to adapt the soil and land, within its limits, to the ordinary uses and necessities of such a way. If a cut is required the soil taken therefrom may be used for a fill wherever needed. But it has not been considered lawful, so far as

I can discover, to take lands outside the limits of its way, to remove earth, timber, rock, or materials therefrom for the building of its road, under the right of eminent domain and public necessity. 1 Redf. on Railroads, 242, *n.* 6, 247 and *n.* 2; *In matter of N. Y. & H. R. R.* v. *Kip,* 46 N. Y. 546. At page 552 of the last case ALLEN, J., says: " The right to take lands upon which to erect a manufactory of cars * * * * is not included in the grant. Neither can lands be taken for a mere subsidiary or extraordinary purpose." He then indicates many of the purposes considered indispensable, such as justifies the taking of lands *in invitam.* But he nowhere intimates that the soil below grade may be taken and carried away for use in other localities. Such an act would be in excess of a right of way or passage. Such act is not essential to the construction and maintenance of a railroad more than the use of ties or fuel. Yet, no one would maintain that a railroad company could condemn land for the purposes of ties or fuel.

The general principles applicable to such cases are well considered in *Railroad Co.* v. *Davis,* 43 N. Y. 137. The right of condemnation is the exercise of an extraordinary power reserved by the State in hostility to the private rights of citizens. It must, therefore, be expressly granted when exercised by a private or municipal corporation. The grant will not be extended by inference or implication. Nor can any thing be taken, except by virtue of the law, for the benefit of the public, and under an indispensable necessity, in the construction and maintenance of the road. It is not sufficient that it is convenient or cheaper for the road; because such a rule would apply to ties, fuel or outside soil for the purposes of embankments. It follows that the railroad company cannot acquire the right to this land for the purpose of excavating the soil and carrying it away for many miles, under the doctrine of eminent domain, by virtue of the statutes now in force.

The statute of 1869, ch. 260, enlarges the rights and powers of railroad companies, but such law only applies to railroads completed and to the acquisition of other lands beyond their original necessities. *Railroad Co.* v. *Davis,* 43 N. Y. 143.

But upon the merits of this case the railroad company does not bring itself within any rule of necessity. All that is claimed in the affidavits, on behalf of this application, is that no gravel suitable for ballast is to be had upon its road, south of these lands, for ten or fifteen miles, and that no other gravel as good as this is

found upon the line of its road between Port Henry and Putnam, a distance of twenty miles. By the affidavit of Buck, it appears that the company has obtained large amounts of gravel just north of these lands, and, upon information and belief, that the company has purchased and owns several acres within half a mile of Gunnison's, on the north, and additional gravel beds can there be procured at a reasonable rate. By the affidavit of W. C. Gunnison, it further appears that the company owns another gravel bed of great extent and good quality, from four to five miles north of Gunnison's, and since March, 1873, has been removing the same for railroad uses. These facts are not controverted by the petitioner. In view of these facts,— of the value and situation of these lands, it would seem to be an unjust and unnecessary exercise of the power conferred upon the company, if these lands, or any part thereof, were taken for the excavation of gravel therefrom.

By reference to *N. Y. & B. R. R.* v. *Godwin,* 12 Abb. N. S. 21; S. C., 62 Barb. 85, and *Matter of N. Y. & J. R. R. Co.,* 21 How. 434, it may be doubted whether the map of the company on file properly shows the extent of the land to be taken. I am inclined to the opinion, however, that the description in the petition is sufficient to obviate the objection to the proceedings.

No other objection requires particular notice.

It follows that the order of the special term should be reversed, with $10 costs, and the motion to appoint commissioners of appraisement should be denied, with $10 costs, but without prejudice to a new application.

*Order reversed and motion denied.*