JOHN J. STEPHENS, Appellant, *v.* NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Respondent.

1. RAILROADS — RIGHT OF WAY — RELEASE. An instrument by which a property owner in consideration of the location of a line of railroad in the street adjoining his premises consents to its construction and operation thereon and agrees to execute a release, constitutes an agreement to release his interest in the soil of the street; but the extent of the right conferred upon the railroad company to make use of the street for railway purposes depends upon the surrounding circumstances at the time of the execution of the instrument.

2. RIGHT OF WAY — RIGHT ACQUIRED. One who, on condition that a railroad company should make "no unnecessary obstruction of the street," and make access to his lots "as easy and convenient as practicable," grants "a right of way along the street only" in front of his property, to the

company which, acting under the permission of the village authorities that it might grade, lay and operate its track, has constructed a single track thereon in conformity with the map filed by it which delineated the right by a single red line in the center of the street, does not confer upon the company the right to utilize the street for as many tracks, sidings and switches as it may deem necessary.

3. Route — Map.   A map on which a proposed railroad is delineated by a single red line, which furnishes no indication whether the line is the center or an exterior line of the proposed route, nor of its width or the amount of land to be taken, does not comply with a statute authorizing a railroad company to lay out and construct its road not exceeding six rods in width, and requiring it to make a map and profile of the route adopted by it.

4. Right of Way — Additional Tracks.   If the location or route of a proposel railroad is indefinitely described upon the map filed by the company and in the instrument executed by a property owner conferring a right of way upon it, the track as established at the time of the grant of the right of way and with reference to the location of which the consent was given, should be held unchangeable, and additional tracks, switches or sidings cannot be constructed without the property owner's permission or the acquisition of the right through statutory condemnation proceedings.

5. Additional Tracks — Injunction.   A railroad company entitled to maintain and operate a single track in the highway becomes a trespasser if, without permission of the owner or acquisition of the right to do so, it adds to its tracks by the construction of switches and sidings, and it is liable to be restrained in its operations and for the damages sustained.

6. Damages — Additional Tracks.   A property owner who has consented to the construction and operation of a single-track railroad in front of his premises may recover damages resulting from the operation by the railroad company of additional tracks without right, so far as such damages are separable from the injury consequent upon the operation of the single track.

*Stephens* v. *N. Y., O. & W. Ry. Co.*, 61 App. Div. 612, reversed.

(Argued March 31, 1903; decided April 28, 1903.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 17, 1901, affirming a judgment in favor of defendant entered upon the report of a referee.

The action was commenced in 1889 to restrain the operation of the defendant's road upon tracks opposite the plaintiff's

premises on Second street, in the village of Fulton, until his interests were acquired through condemnation proceedings, and to recover the damages sustained by him in the past. The principal defense to the action was based upon a resolution of the trustees of the village, permitting the defendant's predecessor, the New York & Oswego Midland Railroad Company, to lay the track of its railroad in the street, and upon an instrument, in writing and under seal, executed by the plaintiff and other abutting landowners, giving their consent to the operation of the railroad upon the street in front of their lots. The trial was had before a referee, who, upon findings, rendered a decision in favor of the defendant and dismissed the complaint. Upon appeal, the Appellate Division, in the fourth department, affirmed the judgment entered upon the referee's decision and the plaintiff appealed to this court.

The facts, as they are established by the findings, show the defendant to be the successor in interest of all the rights, privileges and franchises of the New York & Oswego Midland Railroad Company; which latter corporation was organized, prior to 1869, within this state. The plaintiff, at the time of the events in question, was the owner of certain lands on the southwest corner of Second and Cayuga streets, upon which were erected buildings, and his properties extended along upon the west side of Second street and upon the south side of Cayuga street. The buildings were used for stores, residences and an opera house. He owned the fee of the soil to the center of Second street. In May, 1868, application was made by the New York & Oswego Midland Railroad Company to the trustees of the village "to make, grade and lay the track of its railroad, and to operate the same within the village of Fulton and upon Second street," and such a permission, in terms, was granted by a resolution of the trustees upon conditions, which were complied with. By an instrument, bearing similar date to the resolution of the village trustees, a number of persons, under their hands and seals, consented to the construction and operation of the pro-

posed railroad upon the street. The instrument was in the following form : " In consideration of one dollar to each of the subscribers in hand paid by the New York & Oswego Midland Railroad Company, the receipt of which is hereby acknowledged, and in consideration that the said company shall and will locate the line of their road along and through Second street in the village of Fulton in the county of Oswego, the subscribers severally owning lots lying on and bounded by said street; we, the subscribers, severally consent to the location, construction and operation of such railroad along and upon such street, in front of our respective lots, for no other or further payment for damages than the sums set opposite our respective names, and we severally agree to execute a proper release upon reasonable notice, upon the payment of such sums ; provided, however, that the company shall do no unnecessary damage to or make no unnecessary obstruction of the street and shall put the same in as good condition as can be reasonably done and shall also make the access to our respective lots as easy and convenient as practicable. We further agree and covenant that the said company may enter upon said street and commence the construction of their road before the formal execution of release, they doing no unnecessary damage. In witness whereof we have hereunto set our hands and seals the 21st day of May, 1868." It was executed by the plaintiff in the following manner: " (L. S.) John J. Stephens, for right of way in the street only." The signature of the plaintiff was not, in fact, affixed to this instrument until sometime in the latter part of 1869. In August, 1868, the railroad company had filed a map and profile of its railroad, as located in the county of Oswego, and upon this map the location of the railroad was " delineated " by a red line, somewhat west of the center of Second street, opposite the plaintiff's premises. The certificate attached certified that it was " an accurate description of the line and route surveyed by said company for their proposed railroad." Another map was filed, in December, 1868, locating the proposed railroad by the delineation of a red line,

which appeared to be, substantially, in the center of Second
street opposite the plaintiff's premises ; to which map a certifi-
cate, similar to the previous one, was attached.    In March,
1870, still another map was filed by the company, locating the
railroad, according to a red line delineated upon the map as
in the center of Second street, with the usual certificate as to
its being " an accurate description of the line and route, etc."
In the spring of 1869, the railroad company had laid a single
track through Second street, substantially along and upon the
center of the street ; leaving, upon either side, sufficient space
for the usual street travel.    At that time the company had
freight and passenger depots on the west side of Second
street, at, or near to, the northwest corner of Cayuga and Sec-
ond streets.    In 1870, after the plaintiff had executed the
instrument heretofore described, the railroad company con-
structed a side, or switch, track in Second street, parallel, for
some distance, with its single track, between it and the plain-
tiff's property.    A few years later, the company moved this
side track some four feet further to the west; connected the
two tracks by a switch, at a point opposite a portion of the
plaintiff's premises, and, thereafter, operated the switch track
as its main track, while the original single track was used as a
switch track.    As the result of these changes, the space between
the sidewalk of the street, on plaintiff's premises, and the
company's main track, was reduced to above five and a half
feet and that part of the street was rendered practically impas-
sable for vehicles and unsafe to drive upon.    Neither the con-
sent of the village trustees, nor that of the plaintiff, was
obtained to any of the changes made by the company, after
1869, in the operation of its road in the village street ; nor
were such changes indicated upon any map, or by any certifi-
cate of the corporate management.    In 1881, the present
defendant, having succeeded to the various rights, franchises
and properties of the New York & Oswego Midland Railroad
Company, took control thereof and assumed the operation of
the railroad.    Frequent passenger and freight trains have
been run daily upon the westerly track and other freight and

passenger depots were erected within a few feet of the former ones.

Many facts are found by the referee, which show the great annoyance caused to the plaintiff by the stoppage of trains in close proximity to his premises and in the obstruction of his sidewalk by discharging, or taking on, baggage and express matter. They show that the enjoyment and use of the plaintiff's various properties have been interfered with, in various ways, by the changed mode of operation of the trains upon the street; that, in consequence thereof, the street opposite the plaintiff's premises has been so seriously affected, as not only to have become impracticable for traffic, but some parts of his property have been rendered inaccessible, and that he has been made to suffer great inconvenience and loss. The referee found that he had suffered damage to his premises, in the fee and in the rental value thereof; but he concluded that the effect of the resolution of the village trustees was to make it lawful for the railroad company to construct and to operate its railroad upon Second street " without any restriction as to the particular part of the street it should so occupy," and that thereby it had gained " not only the express legal right," but, also, " the implied legal right," to lay and to operate tracks in Second street, to the extent that it might be found necessary in the management of the railroad, and that it could change its tracks and could lay switch tracks and sidings without the consent of the village, or of the abutting owners. He held that the instrument signed by the plaintiff was a license and that its effect was to abandon what easements the plaintiff had in the street and to preclude him from recovering any damages consequent upon the construction and operation of the railroad.

*Henry D. Donnelly, Paul Armitage* and *William C. Stephens* for appellant. The fee of Second street being in the plaintiff, an abutting owner, the defendant can derive no title or rights thereto by any act of the legislature or village authorities without his consent or without the appraisal and

payment of damages in the mode prescribed by law. (*Peck* v. *S. Ry. Co.*, 170 N. Y. 298.) The plaintiff, being the owner of the fee to the center of Second street, could create an easement therein only by grant or conveyance operating as a grant. (*People* v. *Johnson*, 68 N. Y. 62; *Wheelock* v. *Noonan*, 108 N. Y. 179; *Fargis* v. *Walton*, 107 N. Y. 398; *Payne* v. *Burnham*, 62 N. Y. 69; *Wiseman* v. *Lucksinger*, 84 N. Y. 41; *Mattes* v. *Frankel*, 157 N. Y. 603; *Boyce* v. *Brown*, 71 Barb. 80; *Smith* v. *Floyd*, 18 Barb. 522; *Floyd* v. *Carbeau*, 38 N. Y. 111.) The consent was limited to a single track in the center of Second street, and did not justify the acts of the defendant in laying additional tracks and relocating its road. (*McCruden* v. *R. Ry. Co.*, 151 N. Y. 623; *Onthank* v. *L. S. R. R. Co.*, 71 N. Y. 194; *Herman* v. *Roberts*, 119 N. Y. 43; *Bateman* v. *Talbot*, 31 N. Y. 370; *Paine* v. *Chandler*, 134 N. Y. 391.) The facts found by the learned referee show that the defendant's location, maintenance and mode of operation of its railroad in Second street constitute within every definition a nuisance for which an action for damages will lie and for which a court of equity will afford a remedy by injunction. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Morton* v. *Mayor, etc.*, 140 N. Y. 207; *Garvey* v. *L. I. R. R. Co.*, 159 N. Y. 323; *Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18; *Bates* v. *Holbrook*, 171 N. Y. 461; *Brown* v. *Bower*, 30 N. Y. 519.)

*Udelle Bartlett* and *P. W. Cullinan* for respondent. The grant or consent of the plaintiff conferred the right upon the New York and Oswego Midland Railroad Company to lay all of the tracks in question and operate its railroad opposite the property of plaintiff. (Washb. on Ease. § 1; *White* v. *C., S. L. & P. R. Co.*, 43 Am. & Eng. R. R. Cas. 156; *White* v. *C., S. L. & P. R. Co.*, 122 Ind. 317; *White* v. *C., S. L. & P. R. Co.*, 23 N. E. Rep. 782; *White* v. *C., S. L. & P. R. Co.*, 7 L. R. A. 257; *Geitz's Appeal*, 3 Am. & Eng. R. R. Cas. 186; *Babcock* v. *W. R. R. Co.*, 9 Metc. 553; *K. C. E. R.*

*R. Co.* v. *Cocks*, 50 N. Y. S. R. 736.) The changing of tracks and the location of sidings and switches opposite the plaintiff's premises were made for the improvement of the grades and curves of the railroad. (*Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248; *Matter of N. Y. C. & H. R. R. R. Co.* v. *M. G. Co.*, 63 N. Y. 326; *Matter of N. Y. & H. R. R. Co.* v. *Kipp*, 46 N. Y. 546; *Flinn* v. *N. Y. C. & H. R. R. R. Co.*, 58 Hun, 230.) The New York and Oswego Midland Railroad Company was not restricted to a single track in Second street opposite the plaintiff's premises. (*R. H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 110 N. Y. 128; *People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 75; *Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 490.) The right of the New York and Oswego Midland Railroad Company to occupy the street in front of the plaintiff's premises with all its tracks, etc., was not affected by nonuser or because it did not use all its rights in the street immediately after receiving the grant or consent of the plaintiff. (*Welsh* v. *Taylor*, 134 N. Y. 450; *Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474; *Roby* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 176.) The written consent of the plaintiff to the location, construction and operation of the New York and Oswego Midland railroad opposite plaintiff's premises is a complete answer to this action. (*Heimburg* v. *M. E. R. R. Co.*, 162 N. Y. 352; 19 App. Div. 179; *Ward* v. *M. E. R. R. Co.*, 152 N. Y. 39; *Herzog* v. *N. Y. E. R. R. Co.*, 151 N. Y. 665; 76 Hun, 486; *Foote* v. *M. E. R. R. Co.*, 147 N. Y. 367; *White* v. *N. Y. E. R. R. Co.*, 139 N. Y. 19; *Kane* v. *N. Y. E. R. R. Co.*, 125 N. Y. 164; *Snell* v. *Leavitt*, 110 N. Y. 595; *Curtiss* v. *Noonan*, 10 Allen, 406; *King* v. *Murphy*, 140 Mass. 254; Washb. on Ease. [3d ed.] 661; *Lattimer* v. *Livermore*, 71 N. Y. 174.)

GRAY, J. Whether we hold the instrument in question, to which the plaintiff affixed his seal and signature, to be a license, or an agreement for an easement, is not very material to the decision, in my opinion; for the reason that, in either

holding, it was quite inadequate to confer a right to make use
of the street for railroad operations to an unlimited extent.
If it should be construed to be a license, which creates no title in
the licensee and which, in law, is revocable by the licensor, the
fact of performance by the licensee under its authority, in the
expenditure of large sums of money in constructing its rail-
road plant, would move a court of equity to protect the latter's
rights against revocation. (*Wiseman* v. *Lucksinger*, 84 N. Y.
31; *Cronkhite* v. *Cronkhite*, 94 ib. 323; *Greenwood Lake &
Pt. J. R. R. Co.* v. *N. Y. & G. L. R. R. Co.*, 134 ib. 435.) But
it is quite obvious that such protection would be extended
only to acts, the performance of which had been clearly war-
ranted by the licensor under the terms of his consent. If the
instrument is construed as an agreement for an easement in
land, then its operation would be limited to that which was
actually the subject of the grant and, if in general, or indefi-
nite, terms, the situation and the contemporaneous acts of the
parties would be referred to, for the purpose of discovering
their intention and of ascertaining if the instrument had been
given a practical construction. (*Onthank* v. *L. S. & M. S. R.
R. Co.*, 71 N. Y. 194.) In my opinion, this instrument was an
agreement to give a release of the plaintiff's interest in the soil
of the street and, as such, equity would enforce it for the pro-
tection of the rights of the railroad company. Its consideration
was that the company should locate the road in the street and it
was under seal. The terms of the obligation, as to each party,
were plainly expressed and the only indefiniteness in the
instrument would be in the extent of the company's right to
make use of the street for railway purposes. It was an agree-
ment to release to the company the plaintiff's rights and to
permit it to construct and operate a railway upon the street
in front of his premises. Its intent was that the right to use
his land should pass to the company, and while more formal
words of grant would have been appropriate, nevertheless,
equity will construe it as effecting it. What dispute exists as
to the limitation upon the easement granted, with respect to
the number of tracks which might be laid, or as to their loca-

tion, is to be resolved by getting at the understanding of the parties. That is best done by considering the surrounding circumstances at the time when the instrument relied upon was obtained. Notwithstanding that the instrument bore date in May, 1868, effect is to be given to it as of the time when the plaintiff actually executed it; for only then did he agree to convey any right to burden his land. That was in the fall of 1869 and after the company had constructed a single track, substantially, in the center of the street. He then knew, or was chargeable with the knowledge, that the village authorities had formally permitted the railroad company to " make, grade and lay the track of their railroad and operate the same" in Second street. The maps filed by the company delineated a single red line in the center of the street. But one track had been constructed, which was in the center of the street, and which left it still practicable for street uses on either side. By the terms of the instrument, the plaintiff's agreement was qualified by the added words of " for right of way in the street only " and the company was to make " no unnecessary obstruction of the street," and was " to make the access to plaintiff's lots as easy and convenient as practicable." In the light of these facts, it is not easy to see how the company was in a position to claim that it had gained from the plaintiff the right to utilize the street for as many tracks, or for such sidings or switches, as it might deem necessary in the accomplishment of its corporate purposes. Nor was it in any position to define the easement by the powers conferred by the General Railroad Act of 1850 and, under the consent, to take all such land as it might require for corporate purposes. While a railroad corporation is given the general power " to lay out its road, not exceeding six rods in width and to construct the same," it was required, before any work of construction, to make a map and a profile of the route adopted by it. The only attempt at compliance, in the present case, with the statutory condition as to a map was to indicate upon the maps which were filed the proposed location of the railroad through Second street by a red line, appearing to be,

6

substantially, in the center of the street. Such a map, in my opinion, was a defective compliance with the statute. Delineating the railway by a single red line furnished no indication whether the line was the center, or an exterior, line of the proposed route, nor of its width. The amount of land to be taken did not appear even inferentially. The object of the statute was to provide, by a public record, such information by maps, as would disclose to all persons interested in the construction of the road its true location and boundaries. (*Matter of N. Y. & Boston R. R. Co.*, 62 Barb. 85; *Matter of Boston, H. T. & W. R. R. Co.*, 10 Abb. [N. C.] 104; *N. Y. & Albany R. R. Co.* v. *N. Y., West Shore & B. R. R. Co.*, 11 Abb. [N. C.] 386.) The same principle would seem to have obtained in Massachusetts. (*Housatonic Railroad Company* v. *Lee and Hudson Railroad Co.*, 118 Mass. 391.) It is a necessary, if not a logical, inference that the map, which is to be filed before any construction, shall show something more definite and descriptive than a single red line. If nothing more definite appeared upon the map to show the railroad to be constructed, the plaintiff might reasonably infer that but one track was contemplated; which inference he might consider as confirmed by the actual construction, at the time that his consent was sought. In consideration of the advantages, which might accrue to him from the operation of such a railway through his street, he might be willing to agree to such a use of his land; with provisos against unnecessary obstruction and with the burden of but one track in the middle of the street. The representation upon the map, the language of the village consent and the appearance of the constructed track, when considered with the wording of the plaintiff's agreement, negative the idea that he was granting the unlimited privilege to change, or to add to, the then existing track.

I reach the conclusion that, the location, or route, of the proposed railway being indefinitely described upon the map and by the plaintiff's agreement, the principle of construction, which obtains in the cases of grants of easements made in general terms, should govern here and, applying it to the established

facts, the court should hold that the track, as located in the center of Second street, was unchangeable and that the railway could not be added to upon the plaintiff's land without his further permission, or the acquisition of the right through statutory condemnation proceedings. (Washburn on Easements, 225, 240; *Onthank* v. *Lake Shore & M. S. R. R. Co., supra; Jennison* v. *Walker,* 11 Gray, 423.) When the railroad company undertook to change, and to add to, its tracks, in the ways described, it became a trespasser as to the plaintiff. It rendered itself liable to be restrained in its operations and to a recovery of damages for any injuries sustained. So far as the ordinary and necessary operation of its railroad upon the one track through the street would cause annoyance, or constitute a nuisance, affecting the enjoyment and use of his property, the plaintiff could not complain. No recovery of consequential damages could be had, which were occasioned by the injuries resulting therefrom. They would be the incidents of the right granted, as to which the defendant would be released. But, so far as it was a trespasser upon plaintiff's land, the defendant could be compelled to acquire further easements therein, if needed for its corporate purposes, by purchase, or through condemnation proceedings, under the penalty of being restrained in its operations, if it failed to do so; and, so far as damages had been sustained through defendant's wrongful acts, to the extent that they may be separately established as resulting therefrom, they can be recovered by the plaintiff. That any appreciable damage resulted from the slight change in the location of the passenger and freight depots is not apparent upon the proofs. They were necessary incidents to the operation of the railroad as authorized.

For these reasons, I advise a reversal of the judgment and that a new trial should be ordered, with costs to abide the event.

Parker, Ch. J., Martin, Cullen, Werner, JJ. (and Bartlett, J., in result), concur; Haight, J., absent.

Judgment reversed, etc.