The plaintiff's petition was as follows:
(17) The petition of the Durham and Northern Railway Company represents:
"1. That the petitioner is a corporation duly created and existing under and by virtue of the laws of the State of North Carolina.
"2. That the Richmond and Danville Railroad Company is a corporation duly created and existing under and by virtue of the laws of the State of Virginia.
"3. That the North Carolina Railroad Company is a corporation duly created and existing under and by virtue of the laws of the State of North Carolina.
"4. That the North Carolina Railroad Company, many years ago, and before the incorporation of the town of Durham, acquired for its use a right of way through what is now known as the town of Durham, of a width of 100 feet on each side of its main track, and that it constructed its said road over the center of said right of way.
"5. That the town of Durham has been duly incorporated by act of the General Assembly of North Carolina. *Page 43 
"6. That shortly after the said town was incorporated, and more than twenty years ago, by proceedings duly and lawfully had, a portion of the said right of way, upon which Peabody street is now located, was duly condemned and laid off as a street or public highway, and that for over twenty years the said street, as located upon said right of way, has been openly, adversely and continuously used, occupied and possessed by the said town of Durham and the citizens thereof as a street and public highway.
"7. That the said portion of its right of way was dedicated by the said North Carolina Railroad Company to the public, for use as one of the streets of the town of Durham.
"7 1/2. That for many years before the said street was thus condemned and dedicated, it had been used and treated for all purposes as a public highway, having been previously condemned and dedicated (18) to and accepted by the public for this use.
"8. That on 6 April, 1889, the town of Durham, by its commissioners, at a meeting duly held, adopted the following resolutions, to wit:
"Resolved, That the Durham and Northern Railway Company be permitted, and they are hereby expressly authorized by the town of Durham, to use Peabody street for the purpose of extending their track from a point just west of the electric-light house, where their present right of way stops, to a point on said street opposite the eastern end of the factory building of W. Duke, Sons Co., and that they be permitted to grade said street for said purpose: Provided, that said railway company put said street in as good order as it now is; And, provided further, that they put all street crossings, now existing or hereafter to be made, in good order, so that vehicles can conveniently and safely cross; And also provided, that they shall so construct their track, where the same may pass in front of any storehouse, that wagons can get access to said stores.
"Resolved, That whenever, on said street, the said railroad company shall take up any pavement, they shall replace the same in as good order as the said pavement now is.
"Resolved, That the said railway company only be allowed to lay one track over the street hereby granted to them for the purpose of extending their track.
"Resolved, That the road shall be run up said street as follows: It shall run up the south side of Peabody street from their present terminus to a point nearly opposite the western end of the Hotel Claiborn, where Corcoran street crosses Peabody street, where it shall cross to the northern side of Peabody street, and continue along the northern side of Peabody street, as near the northern edge thereof as possible *Page 44 
(19) and as is safe for the buildings on the north side of Peabody street, to the western limit of the portion of said street on which the railway company is authorized to lay its track by the resolution.
"Resolved, That the permission hereby given shall in no way interfere with, or be taken as repealing, any franchise heretofore granted to the Durham Street Railway Company.
"9. That the petitioner, requiring the said right of way as necessary for the exercise of its franchise and the performance of its duties, and for the great convenience of the public, has, in pursuance and by authority of the said permission and authority, constructed its railroad and laid its track upon a strip of land twenty feet wide, except where embankments shall be required, where the width shall be sufficient for an embankment on which to accommodate a single track, in which case the width is not to exceed thirty feet, beginning just opposite and at the southeastern corner of the factory building of W. Duke, Sons 
Co., and designated "A" on the map; thence easterly along Peabody street and bounded on the north parallel with one hundred feet from the center line of the North Carolina Railroad, and on the south by a line two feet south from and parallel with the track of the Durham and Northern Railway, as shown on the map, to the point where said track begins to curve near Corcoran street; thence diagonally with said curve across Corcoran street, as shown on the map to be 20 feet wide; thence along and upon the southern side of Peabody street to the point where said track leaves said street, to be 20 feet wide; thence from the point where the track of said petitioner's road leaves Peabody street, as shown on said map, of the width of 30 feet, beyond the eastern edge of Cleveland (formerly Roxboro) street, where the old right of way of the petitioner stopped, as shown on said map, said strip being so located with reference to said old right of way as to allow the track laid thereon to be extended on this strip, as shown by said map; that a plat of the said right of way, and of the said track, will be filed with this (20) petition. (This amendment was made by leave of court, 18 May, 1889. D.C. Mangum, C. S.C.)
"10. That, as petitioner is advised and believes, the said Richmond and Danville Railroad Company is, by virtue of its lease of the railroad property and franchise of the North Carolina Railroad Company, entitled merely to an easement in the said right of way required and occupied by petitioner, subject to the superior easement which the town of Durham has acquired therein; and that neither the North Carolina Railroad Company nor the Richmond and Danville Railroad Company have any right to lay a track upon said street without the leave of the town of Durham. *Page 45 
"11. That the said right of way has never, in any manner, been used by the North Carolina Railroad Company or Richmond and Danville Railroad Company, and that it is not necessary to either of said companies for the exercise of their franchise or the discharge of their duties.
"12. That the North Carolina Railroad Company owns amply sufficient right of way, exclusive of the said strip of land, for all of its present or future purposes.
"13. That the said strip of land required by the petitioner passes through the heart of the town of Durham, and near its business center, being located within a block of the principal stores and warehouses of Durham, and that the track of petitioner constructed upon this right of way, and that affording an accessible competing line, will be of the greatest convenience to the citizens of said town, and that it is of the greatest importance to your petitioner that its road should be extended to and near the said business houses and tobacco factories, and especially to the Duke factory building, where an immense amount of freight will be delivered.
"14. That this is the only practicable route for petitioner's road to reach the said factories and warehouses and business center, and that it may be constructed without injuring or interrupting the business of either of defendant companies, without interference with the exercise of their franchises, and, at the same time, with great (21) usefulness, convenience and benefit to the public.
"15. That the defendant corporations have an easement only in this right of way for the purpose of operating their railroads, subject to the superior easement of the town of Durham, as above stated, and that, for this reason, petitioner cannot acquire from the defendants, or either of them, the said right of way by purchase.
"16. That the defendants are unwilling to sell to petitioner any interest they may have in the said land.
"17. That neither of said defendants is entitled to more than nominal damages for the right of way which petitioner has taken, if entitled to any damages at all.
"18. That the petitioner, by its charter, has full power and authority to acquire land for the purpose of constructing its road, and for side-tracks and turn-outs, etc., for the operation of the same, and to have land condemned by the order and judgment of any court of record.
"Wherefore, the petitioner demands judgment," etc.
The defendants moved to dismiss the proceedings upon the ground that, upon the face of the petition, the clerk did not have jurisdiction of the proceeding. *Page 46 
The court below dismissed the proceeding, and the plaintiff appealed.
In this court the defendants moved to dismiss for the additional reason that the petition did not state facts sufficient to constitute a cause of action.
The defendants moved, in the court below, to dismiss the petition, on the ground that the clerk did not have jurisdiction (22) of the proceedings. By the charter of the petitioner (Acts 1887, ch. 140, sec. 6) it is allowed to condemn land under "the same terms and rules" as are prescribed for the condemnation of lands by the North Carolina Railroad Company, and one of the provisions of the charter of the said company is that such a proceeding shall be commenced before a court of record, having common-law jurisdiction. The motion is based upon the erroneous assumption that the clerk, as clerk (leaving out of view his probate functions), has a separate and independent jurisdiction. The jurisdiction is all in the Superior Court, and the only distinction is between acts which can be performed by the clerk in vacation, acting as and for the court, and acts which can only be done by the judge, either in vacation at Chambers or in term time. Brittain v. Mull, 91 N.C. 498;Strayhorn v. Blalock, 92 N.C. 292; Jones v. Desern, 94 N.C. 32; Clickv. Railroad, 98 N.C. 390. In the last named case the proceeding was under the charter of the Western North Carolina Railroad Company, which contains the same provision in respect to condemnation proceedings as the one under consideration. The Court said: "In this case the application to the court was made in term time, and the court had authority to make, and properly made, as far as appears, the order appointing the commissioners, and thus obtain jurisdiction. It would not have been otherwise, as to the jurisdiction, if the proceeding had been begun in vacation, because the jurisdiction in any case was that of the court, not that of the clerk; the latter would, in that case, simply have represented and acted for the court." These authorities are decisive against the defendant, as to the motion to dismiss for want of jurisdiction.
In this Court the defendant moved to dismiss for the further reason that the petition does not state facts sufficient to constitute a cause of action. It is contended that the petitioner having already constructed its road to one of its termini, the town of Durham, its power to (23) condemn land in that locality is exhausted. This involves a very *Page 47 
serious question, and one which we do not feel warranted in determining upon the face of the petition. It is true that the resolutions of the town of Durham (which are embodied in the complaint), in describing the alleged easement granted by the said town to the petitioner, speak of "the electric-light house (as the point) where the present right of way stops," and a similar expression occurs in the ninth section of the petition; but this language was used apparently for the purpose of description merely, and we cannot attach to it the important legal effects which follow direct and solemn admissions in pleadings. We will not, therefore, consider this phase of the case, but will assume, for the purpose of the discussion, that the power to condemn has not been exhausted, and that the petitioner has the right to condemn the land in question.
This introduces us to the other ground assigned by the defendant, that the petitioner does not allege that it has "surveyed the line or route of its proposed road, made a map or survey thereof by which such route or line is designated, and that they have located their said road according to such survey, and filed certificates of such localities, signed by a majority of the directors of the company, in the clerk's office, and given notice," etc. The Code, sec. 1952.
These conditions must be complied with before any company can construct any part of its road, and The Code, sec. 1944, requires that their performance shall be alleged in the petition in all proceedings to condemn land. This legislation was taken from the general railroad law of New York, where, as with us, experience had shown the necessity of more particular and uniform regulations upon the subject. Before the enactment of these laws, railroads were entitled, under the ordinary provisions of their charters, to locate their roads between the termini, according to their discretion, and this discretion could not be controlled by the courts except in cases where it was abused. (24) The remedy was usually by injunction, and this often occasioned much vexatious litigation and delay, both to the railroad company and the landowner. Besides, much needless injury to property might be inflicted, undue advantages taken, and even the peace of the State disturbed, before this remedy could be obtained. It was, therefore, deemed necessary to require the filing of maps, etc., as above provided, so that the landowner might know what particular land was intended to be appropriated, in order that, if he felt aggrieved, he could apply to the court within fifteen days after written notice of such location, and have his grievances passed upon. The Code, secs. 1944 and 1952. "A fair construction of these laws" (says the Supreme Court of New York, In re New York and Boston R. R. Co., 62 Barb., 85) "requires a *Page 48 
chronological fulfillment of these provisions." "By doing this," continues the Court, "the company, in the first instance, has the right to arbitrarily locate the route, but the statute then gives the right to the property owner to secure a change of that location, if he can show cause for changing it to the satisfaction of the three persons to be appointed by the court to determine the question. This right of the property owner may be material and valuable, in view of the manner in which the railroad may cut his property and affect the highways and other objects in the neighborhood. At any rate, it is a right given to him by the statute, and it is not for a corporation, nor for the court, to deprive him of it." The purpose of these laws is also stated in Mills on Eminent Domain, 62: "In order to obviate complaints of abuse of discretion, the Legislature of New York passed an act requiring the filing of a map of the proposed road, and that parties aggrieved may apply for the appointment of commissioners to have the road altered. . . . The remedy cannot be applied to force the roads from the land of one owner upon another, nor can the continuity of the route be (25) broken." In Norton v. Wall Kill Valley Railroad, 61 Barb., 76, Learned, J., says: "It is suggested that if commissioners were appointed in such cases great delay might ensue. But the statute gives power to the company to limit the time within which this application can be made. All they have to do is to notify the property holders. After such notice, the persons aggrieved have but a limited and short time within which to make the application. There need be no delay. And whenever there is reasonable ground of complaint as to the route — a route established merely by the will of the company — I think that the person feeling aggrieved should have a fair hearing before persons competent to settle the question."
The foregoing references are made for the purpose of showing the true spirit and purpose of these laws, and that the performance of the preliminaries required is indispensably necessary before proceedings to condemn can be instituted. It is said that, although the petition in this case fails to allege the performance of these conditions, the omission is not fatal, and that it is but a defective statement of a good cause of action. We do not concur in this view. The exercise of the power of eminent domain is in derogation of common right, and all laws conferring such power must be strictly construed. By the very terms of the law under consideration, these allegations must be made in the petition, and we think that they are as much jurisdictional in their character as is the fact that the landowner and the railroad company have failed to agree. "If the petition does not state the facts required by the statute to be stated, an objection in that regard can be raised *Page 49 
preliminarily in effect by way of demurrer, and should be disposed of before proceeding upon the merits. If such objection is well taken, the proceeding is dismissed, unless a proper cause for amendment is shown."West Shore and Buffalo Railroad Co., 64 How. Prac., 216; Fieri Special Pro., 523. So far from any amendment being suggested in the particulars mentioned, the counsel were candid enough to (26) admit that maps of the route, etc., had not in fact been filed.
It only remains, then, for us to consider whether the above mentioned provisions of the general railroad act (The Code, ch. 49), are applicable to the petitioner. The petitioner was incorporated under chapter 140, Acts 1887. Its charter provides, as we have said, that it should have the power to condemn land under the "same rules and terms as are prescribed for the North Carolina Railroad Company." The charter of the latter company does not make the filing of a map of the route and the giving of notice, etc., a prerequisite to the institution of proceedings to condemn, and it is insisted that our case is governed by the provisions of this charter, and not by those of the general railroad act. It is also urged that the Legislature has no power to change the charter of the North Carolina Railroad Company in the particulars mentioned, and that if it has attempted to do so, such legislation would be unconstitutional, because it would impair vested rights. It is well settled that a mere change in the remedy does not fall within the inhibitory provisions of the Constitution. Cooley Cons. Lim., 287; Railroad v.Kenner, 14 Am. Eng. Railroad Cases, 30; Hinton v. Hinton, Phil., 415; Railroad v. McDonald, 12 Heisk., 54; New Jersey v. Weldon, 23 Am. Eng. Railroad Cases, 134. But this question does not arise here, as the point is not whether the general act applies to the charter of the North Carolina Railroad Company, but whether it is applicable to the charter of the petitioner. This latter charter was granted in 1887 (chapter 49, Acts 1887), and must be construed with reference to existing laws. In 1883 (see section 701 of The Code), it was provided that "this chapter (on corporations) and the chapter on railroads and telegraphs, so far as the same are applicable to railroad corporations, shall govern and control, anything in the special act of Assembly to the contrary notwithstanding, unless in the act of the General Assembly creating the corporation, the section or sections of (27) this chapter and the chapter entitled `Railroads and Telegraph Companies,' shall be specially referred to by number, and, as such, specially repealed." This provision very plainly shows that it was the intention of the Legislature that the general railroad act should apply, and that its important provisions should not be repealed, either by implication or by hasty legislation. It is but an affirmance of the principle *Page 50 
that the repeal by implication of a general law by a private statute is not favored. 7 Myers' Fed. Dec., sec. 2975. But the statute goes a step further, and prescribes a rule of construction under which the private act, even if it be inconsistent with the provisions of the general law, shall not repeal them "unless they are specially referred to by number, and, as such, specially repealed."
It is unnecessary to determine in this action whether this section of The Code applies to charters in existence prior to 1883; but it is, we think, too plain for argument that it does govern and control all charters granted after its enactment.
The reference in the petitioner's charter to the charter of the North Carolina Railroad Company can have no greater effect than if the "terms and rules" referred to had been expressly set forth in the act of incorporation, and these, as we have seen, must give way to the general law. It may be further remarked that there is no real conflict, in any material particular, between the two remedies. The general law only superadds certain requirements as to which the private act is silent. They may well be construed in pari materia.
Holding, as we do, that the general law applies, and that, under this law, the petitioner has failed to set forth in his petition such facts as constitute a cause of action, we must conclude that his Honor committed no error when he allowed the motion of the defendant and dismissed the proceeding.
Proceeding dismissed.
Cited: S. c., 108 N.C. 304; Durham v. R. R., ibid., 401; Liverman v.R. R., 109 N.C. 55; R. R. v. Lumber Co., 114 N.C. 692; S. v. Jones,139 N.C. 636; R. R. v. Ferguson, 169 N.C. 71; Power Co. v. Power Co.,171 N.C. 256.
(28)