STATE HIGHWAY COMMISSION AND CITY OF WILSON v. M. H. MATTHIS AND WIFE, FRANCIS D. MATTHIS; JULE D. FORBES AND WIFE, LOTTIE E. FORBES; L. H. GIBBONS, TRUSTEE, AND DIXIE R. SMITH

No. 68SC50

(Filed 18 September 1968)

1. Eminent Domain § 1— nature and extent of power

Eminent domain is the power of the State or some agency authorized by it to take or damage private property for a public purpose upon payment of just compensation.

2. Eminent Domain § 4— delegation of power by legislature

The General Assembly prescribes the manner in which the power of eminent domain may be exercised.

3. Eminent Domain § 4— delegation of power to State agency

An agency of the State established by act of the General Assembly is not empowered to exercise the State's inherent right of eminent domain unless such power is expressly granted by the legislature; when the power is expressly granted, the authority is limited to the express terms or clear implication of the act or acts in which the grant is contained.

4. Eminent Domain § 7— jurisdictional fact in G.S. Ch. 40 proceeding — inability to agree on price

It is a preliminary jurisdictional fact in eminent domain proceedings under G.S. Ch. 40 that there exist an inability to agree for the purchase price; the condemnor must state in its petition that it has not been able to acquire title and the reason for such inability. G.S. 40-11, GS.. 40-12.

**5. Highways and Cartways § 1;    Eminent Domain § 7——    power    of Highway Commission**

The State Highway Commission, which is an agency of the State duly created by act of the General Assembly, has been expressly granted under prescribed conditions the power of eminent domain, and the Commission must follow the procedures and conditions set out by the legislature before it has the right to exercise such power. G.S. 136-1, G.S. 136-19, G.S. 136-103.

**6. Eminent Domain § 7——    Highway Commission must follow G.S. Ch. 136 procedures**

By virtue of amendment to G.S. 136-19, effective 1 July 1960, the procedure to be used by the Highway Commission in the exercise of its power of eminent domain has been changed from that contained in G.S. Ch. 40 to that contained in Article 9 of G.S. Ch. 136; before the power of eminent domain is vested in the Commission, however, there is a requirement that the Commission and the landowner be unable to agree as to the price of the property to be taken. G.S. 136-19.

**7. Eminent Domain § 7——    compliance of "declaration of taking" with statute**

The Highway Commission's "Declaration of Taking" filed in condemnation action *is held* to be in substantial compliance with the provisions of G.S. 136-19.

**8. Eminent Domain § 7——    G.S. Ch. 136 condemnation —— allegations of jurisdictional facts —— no necessity to allege that parties are unable to agree on price**

In order for the court to obtain jurisdiction in a condemnation proceeding instituted by the Highway Commission pursuant to G.S. Ch. 136 it is not necessary that the Commission alleged in its complaint that the Commission and the owners are unable to agree as to the price of the lands sought to be condemned. G.S. 136-103.

**9. Pleadings § 2——    statement of cause of action —— demurrer**

In a civil action the complaint must contain, among other things, "a plain and concise statement of the facts constituting a cause of action;" if not, it is demurrable. G.S. 1-122.

**10. Eminent Domain § 7——    G.S. 1-122 is inapplicable to G.S. Ch. 136 condemnation**

The distinguishing difference between eminent domain proceedings brought under G.S. Ch. 40 and proceedings brought under Article 9 of G.S. Ch. 136 by the Highway Commission is that the legislature in effect has made inapplicable to G.S. Ch. 136 proceedings the provision of G.S. 1-122 insofar as it relates to complaints filed in eminent domain cases by the Highway Commission arising after 1 July 1960. Section 3 of Ch. 1025 of the 1959 Session Laws.

**11. Eminent Domain §§ 7, 13——    demurrable    petition —— motion    for leave to amend**

Where it is determined on appeal that a demurrer to a petition in condemnation proceedings should have been sustained, the petitioner may apply for leave to amend the petition under G.S. 1-131.

**12. Eminent Domain § 7——    pleadings in G.S. Ch. 136 condemnation**

In a G.S. Ch. 136 condemnation proceeding, complaint which fails to allege that the Commission and the landowners are unable to agree on

the price of land sought to be condemned *is held* to allege a defective statement of a good cause of action.

**13. Eminent Domain § 7— landowners precluded from attacking Commission's complaint**

In a condemnation proceeding instituted by the Highway Commission pursuant to G.S. Ch. 136, defendant landowners have no standing to attack the Commission's complaint which alleges a defective statement of a good cause of action where (1) the defendants in their answer admit the power, fact and necessity of the exercise of eminent domain by the Commission, and where (2) the defendants have petitioned the court for payment of, and have received, the sum paid into court by the Commission as its estimate of just compensation.

**14. Eminent Domain § 6— evidence of value — testimony concerning proposed subdivision**

In condemnation proceedings instituted by the Highway Commission, the trial court did not err in refusing to allow defendant landowners to show the effect that highway construction would have upon the planned development of their property, since the property was at most a proposed subdivision in that defendant had not subdivided the property on the ground, nor sold any lots therein, nor dedicated any streets, nor recorded the proposed maps to the subdivision.

**15. Eminent Domain § 6— evidence of value — option on land in proposed subdivision**

The trial court did not commit prejudicial error in excluding, on the issue of damages, defendant landowners' testimony as to the adverse effect of highway condemnation proceedings on the exercise of an option by a third party for the purchase of lots in the defendants' proposed subdivision, it appearing from the evidence that there was no existing subdivision but only plans for one.

**16. Eminent Domain § 6— evidence of value — remoteness of testimony**

Testimony by real estate appraiser as to the value of defendants' land before the taking by the Commission is properly excluded, it appearing that the witness first saw the land more than three years after the date of the taking and that at the time the witness saw the land the highway and embankment had already been constructed thereon.

**17. Evidence § 48— exclusion of expert testimony — effect of failure to qualify the witness**

Where the party tendering a witness has made no request that the witness be qualified as an expert, and the witness has not been found to be an expert when hypothetical questions are asked of him, the exclusion of the witness' expert testimony will not be reviewed on appeal.

**18. Trial § 42— quotient verdict defined — prohibited**

A quotient verdict is one that is rendered in a civil action in pursuance of an agreement by the jurors to accept one-twelfth of the aggregate amount of their several estimates of the measure of damages, without the assent of their judgment to such a sum as their verdict; such a verdict is invalid and not permitted.

**19. Trial § 46— impeaching the verdict — evidence**

In order to impeach the verdict of a jury, the evidence must come from sources other than the jurors themselves.

**20. Trial §§ 42, 54— quotient verdict — motion for new trial — sufficiency of evidence**

In order to have a verdict invalidated as a quotient verdict, it must be shown that the jurors agreed, prior to obtaining the quotient, that they would accept it as their verdict; consequently, a motion for new trial on the ground that the jury returned a quotient verdict is properly denied where the only evidence is that, immediately after the return of the verdict, appellant's attorney entered the jury room and found a paper whereon twelve figures had been written down and divided by 12, and that the figure arrived at was the exact amount of the verdict.

APPEAL by all defendants from *Fountain, J.,* October 1967 Civil Session of WILSON Superior Court.

Proceedings instituted by plaintiff State Highway Commission for condemnation of an "easement, in perpetuity, for right of way for all purposes for which the plaintiff is authorized by law to subject the same."

Defendants M. H. Matthis and wife, Frances D. Matthis, and Jule D. Forbes and wife, Lottie E. Forbes, owned a 17.77-acre tract of land situated in Wilson Township, Wilson County, subject to a deed of trust to L. H. Gibbons, Trustee for Dixie R. Smith, as recorded in Book 720, page 358, Wilson County Registry. On 21 September 1963 plaintiff filed its complaint, declaration of taking, and notice of deposit as required by Article 9, Chapter 136 of the North Carolina General Statutes. The easement taken covers 2.97 acres of defendants' 17.77-acre tract and is a part of State Highway Project 8.24407, Wilson County.

Upon motion of the State Highway Commission, the City of Wilson was made a party. The City of Wilson filed answer alleging that on State Highway Project 8.24407 it had entered into a reimbursement agreement with the State Highway Commission concerning all expenditures for "damages by jury awards above the Commission's estimate of damages deposited at the time of filing of Complaint, Declaration of Taking and Notice of Deposit."

A consent order was entered in which it appears that all issues raised by the pleadings were determined or stipulated except that of just compensation.

There appears in this consent order the following:

"That the plat filed by the plaintiff in this action and entitled 'PROPERTY DESCRIBED IN CIVIL ACTION ENTITLED NORTH CAR-

OLINA STATE HIGHWAY COMMISSION VS. M. H. MATTHIS, ET UX, ET AL.,' is a correct portrayal of what it purports to show and is a fair and accurate representation of the property affected by the appropriation and the property and property rights appropriated. The defendants, however, by their failure to object to said map, do not waive their right to introduce evidence to show that the property involved had been subdivided into residential building lots prior to the time of the taking by the plaintiff. The plaintiff reserves the right to object to the competency of such evidence."

With its declaration of taking, the plaintiff State Highway Commission deposited the sum of $15,850 as its estimate of just compensation due.

The court submitted the issue of just compensation which the jury fixed at $18,726. From judgment in accordance with the verdict, including interest thereon, the defendants appealed, assigning errors.

*Attorney General Thomas Wade Bruton, Deputy Attorney General Harrison Lewis, and Trial Attorney Robert G. Webb for plaintiff appellee State Highway Commission.*

*Lucas, Rand, Rose, Meyer & Jones by Z. Hardy Rose, and on Reargument, David S. Orcutt for the City of Wilson.*

*Robert B. Morgan and Carr & Gibbons by L. H. Gibbons for defendant appellants.*

MALLARD, C.J.

This case was first argued in this court on 24 April 1968. Thereafter on 23 May 1968 and pursuant to the provisions of Rule 31 of the Rules of Practice in this court, it was ordered by the court that the case be set for reargument during the week of 2 September 1968. It was reargued as ordered upon the following questions:

"(1) Under G.S. Chaps. 40 and 136, is it necessary for the condemnor to make a good faith attempt to purchase the subject property; and to allege in the complaint, or the declaration of taking, the prior good faith attempt in order for a complaint in a condemnation proceeding to state a cause of action?

(2) If so, does the failure to so allege constitute a jurisdictional defect so as to require the court *ex mero motu* to take notice and dismiss; or may the defect be cured by amendment, if allowed in the discretion of the court?"

**[1, 2]** Eminent domain is the power of the State or some agency authorized by it to take or damage private property for a public purpose upon payment of just compensation. 3 Strong, N. C. Index 2d, Eminent Domain, § 1. The General Assembly prescribes the manner in which the power of eminent domain may be exercised. *Power Co. v. King,* 259 N.C. 219, 130 S.E. 2d 318.

**[3]** An agency of the State established by act of the General Assembly is not empowered to exercise the State's inherent right of eminent domain unless such power is expressly granted by the General Assembly. 26 Am. Jur. 2d, Eminent Domain, § 5; *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129. When the power is expressly granted, the authority is limited to the express terms or clear implication of the act or acts in which the grant of the power of eminent domain is contained. 26 Am. Jur. 2d, Eminent Domain, § 18.

This court said in an opinion by Brock, J.:

"The exercise of the power of eminent domain is in derogation of common right, and all laws conferring such power must be strictly construed. *Redevelopment Commission v. Hagins,* 258 N.C. 220, 128 S.E. 2d 391; *R. R. v. R. R.,* 106 N.C. 16, 10 S.E. 1041. By the very terms of G.S. 40-12 the Petition must state in detail the nature of the public business and the specific use to which the land will be put. These allegations, we think, are as much jurisdictional in their character as is an allegation of the fact that the petitioner and the respondents have been unable to agree. *R. R. v. R. R., supra.*" *Redevelopment Commission v. Abeyounis,* 1 N.C.App. 270, 161 S.E. 2d 191.

**[4]** G.S. 40-12 requires the petition in the special proceeding under Chapter 40 to state that the condemnor has not been able to acquire title and the reason of such inability. G.S. 40-11 provides that before the right of eminent domain accrues to the condemnor thereunder, there must exist an inability to agree for the purchase price. This has been held to be a preliminary jurisdictional fact in eminent domain proceedings under Chapter 40 of the General Statutes. *Board of Education v. McMillan,* 250 N.C. 485, 108 S.E. 2d 895; *Winston-Salem v. Ashby,* 194 N.C. 388, 139 S.E. 764.

**[5]** The State Highway Commission is an agency of the State of North Carolina duly created and established by act of the General Assembly. G.S. 136-1.

In the act establishing the State Highway Commission, as amended from time to time, the General Assembly has expressly granted to it, under prescribed conditions, the power of eminent do-

main and has set forth the procedure to be followed in the exercise of such power. This procedure *must be* followed, and the conditions prescribed therein must be met *before* the State Highway Commission has the right to exercise the power of eminent domain. G.S. 136-19; G.S. 136-103.

[6]    Prior to 1 July 1960, the State Highway Commission was authorized to institute eminent domain proceedings pursuant to the authority granted by the former provisions of G.S. 136-19. The procedure to be followed was that prescribed in G.S. 40-11, *et seq.*

By Chapter 1025, Session Laws of 1959, G.S. 136-19 was amended and a new article, designated Article 9, was added to Chapter 136, effective 1 July 1960. The case under consideration was instituted by issuance of a summons thereunder on 21 September 1967.

After the foregoing amendment, the pertinent part of G.S. 136-19 reads:

> "*Whenever the Commission and the owner* or owners of the lands, materials, and timber required by the Commission to carry on the work as herein provided for, *are unable to agree as to the price thereof, the Commission is hereby vested with the power to condemn* the lands, materials, and timber *and in so doing the ways, means, methods, and procedure of Article 9 of this Chapter shall be used by it exclusively.*" (emphasis added)

Thus, by this amendment the General Assembly has changed the "ways, means, methods and procedure" to be used by the State Highway Commission in the exercise of its power of eminent domain from that contained in Chapter 40 of the General Statutes to that contained in Article 9 of Chapter 136 of the General Statutes. However, according to the foregoing amendment to G.S. 136-19, before the power of eminent domain is vested in the State Highway Commission, there is a requirement that the Commission and the owner be unable to agree as to the price of the property to be taken.

Article 9 of Chapter 136 of the General Statutes consists of G.S. 136-103 through G.S. 136-121. G.S. 136-103 sets out the exclusive procedure for the institution of the action. It provides that "in case condemnation shall become necessary the State Highway Commission shall institute a civil action" by the filing of "a complaint and a declaration of taking." It is then required, among other things, that the declaration shall contain or have attached to it the following:

> "(1)    A statement of the authority under which and the public use for which said land is taken.

(2)   A description of the entire tract or tracts affected by said taking sufficient for the identification thereof.

(3)   A statement of the estate or interest in said land taken for public use and a description of the area taken sufficient for the identification thereof.

(4)   The names and addresses of those persons who the Highway Commission is informed and believes may have or claim to have an interest in said lands, so far as the same can by reasonable diligence be ascertained and if any such persons are infants, non compos mentis, under any other disability, or their whereabouts or names unknown, it must be so stated.

(5)   A statement of the sum of money estimated by said Commission to be just compensation for said taking."

It is also provided that the complaint *shall* contain or have attached thereto the following:

"(1)   A statement of the authority under which and the public use for which said land is taken.

(2)   A description of the entire tract or tracts affected by said taking sufficient for the identification thereof.

(3)   A statement of the estate or interest in said land taken for public use and a description of the area taken sufficient for the identification thereof.

(4)   The names and addresses of those persons who the Highway Commission is informed and believes may have or claim to have an interest in said lands, so far as the same can by reasonable diligence be ascertained and if any such persons are infants, non compos mentis, under any other disability, or their whereabouts or names unknown, it must be so stated.

(5)   A statement as to such liens or other encumbrances as the Commission is informed and believes are encumbrances upon said real estate and can by reasonable diligence be ascertained.

(6)   A prayer that there be a determination of just compensation in accordance with the provisions of this Article."

When the complaint and the declaration are filed, it is required by this statute that they shall be accompanied by the deposit with the Clerk of the Superior Court of a sum of money estimated by the State Highway Commission to be just compensation.

[7]   The "Declaration of Taking" filed herein is in substantial compliance with the provisions of G.S. 136-19.

The complaint reads as follows:

"1.   That the State Highway Commission is an agency of the State of North Carolina with its principal office in Raleigh, North Carolina; that it possesses the powers, duties and authority, including the power of eminent domain, vested in it by the General Assembly of North Carolina.

2.   That the plaintiff is informed and believes and alleges upon information and belief that those persons whose names and addresses are set forth in Exhibit 'A', attached hereto and made a part hereof, are the only persons who have or claim to have an interest in the property described in attached Exhibit 'B', insofar as the same can, by reasonable diligence, be ascertained; that said persons are under no legal disability except as stated in Exhibit 'A'.

3.   That the tract or tracts of land affected by the taking are described in Exhibit 'B', attached hereto and made a part hereof.

4.   That the plaintiff is informed and believes and alleges upon information and belief that said property is subject only to such liens and encumbrances as are set forth in Exhibit 'A' attached hereto.

5.   That pursuant to the authority vested in the plaintiff under the provisions of G.S. 136-19 and G.S. 136-103, et seq., and pursuant to a resolution of said Commission duly passed, it is necessary to condemn and appropriate an interest or estate in the property described in Exhibit 'B', for public use in the construction of that certain highway project described in Exhibit 'C', attached hereto and made a part hereof; that said interest or estate and the area appropriated are described in Exhibit 'B', attached hereto.

6.   That the plaintiff has filed in the Superior Court in the county in which this action is pending a Declaration of Taking and Notice of Deposit and has deposited with said Court the sum of money estimated by the Commission to be just compensation for the taking.

WHEREFORE, plaintiff prays that just compensation for the taking of the interest or estate herein set forth be determined according to the provisions of Article 9 of Chapter 136 of the General Statutes and for such other relief as to the Court may seem just and proper."

Neither in the complaint nor in the declaration filed herein is there a specific allegation that the Commission and the owners are

unable to agree as to the price of the lands sought to be condemned. This failure under the provisions of G.S. 40-12 has been held to be a jurisdictional defect. *Board of Education v. McMillan, supra; Winston-Salem v. Ashby, supra.* However, no case has come to our attention in which this jurisdictional question was raised or decided in a condemnation case involving the State Highway Commission.

[8]    The complaint in the case under consideration complies with G.S. 136-103 in that the allegations required by this section are set out. However, we are also concerned here with the question of whether *it is necessary* in order for the court to obtain jurisdiction *to allege* that the Commission and the owners are unable to agree. We are of the opinion and so decide that under G.S. 136-103, it is not required for jurisdictional purposes that such be alleged because the statute specifically prescribes what shall be alleged. G.S. 136-19 is a condition precedent to the State Highway Commission's right of eminent domain, but the General Assembly, by the express provisions of G.S. 136-103, has set out the procedure required and the necessary allegations of a complaint. The proceedings under Chapter 40 of the General Statutes is designated a special proceeding and specifically requires that a petition to be filed thereunder must, in effect, state that the condemnor has not been able to acquire title and the reason for such inability. G.S. 40-12. There is no such provision in G.S. 136-103 which designates the proceedings a "civil action."

[9, 10]    Under G.S. 1-122, in a civil action the complaint must contain, among other things, "a plain and concise statement of the facts constituting a cause of action." If not, it is well settled that it is demurrable. *Gillespie v. Goodyear Service Stores,* 258 N.C. 487, 128 S.E. 2d 762. However, the General Assembly, as it has the power to do (26 Am. Jur. 2d, Eminent Domain, § 5) in Section 3 of Chapter 1025 of the 1959 Session Laws, in effect made inapplicable the provisions of G.S. 1-122 insofar as it relates to complaints filed in eminent domain cases by the State Highway Commission arising after 1 July 1960, the effective date thereof. This is the distinguishing difference between cases brought under the provisions of Chapter 40 and by the State Highway Commission under Article 9 of Chapter 136 (G.S. 136-103, et seq.).

The case of *State Ports Authority v. Felt Corp.,* 1 N.C.App. 231, 161 S.E. 2d 47, is distinguishable from the case under consideration. This court was there construing Article 9 of Chapter 136 of the General Statutes in connection with G.S. 143-218.1. G.S. 143-218.1 provides that all transactions relating to the acquisition of real property by the State Ports Authority "shall be subject to prior review

by the Governor and Council of State, and shall become effective only after the same has been approved by the Governor and Council of State." Judge Parker, speaking for the court, said, "Since plaintiff was powerless to act without such prior review and approval, the fact of such prior review and approval must be alleged and proved." In this case brought by the State Ports Authority, the plaintiff alleged that it had the power of eminent domain under the provisions of Chapter 143 of the General Statutes. The defendant demurred for the reason that the complaint failed to allege facts sufficient to state a cause of action inasmuch as, among other things, it failed to allege the prior approval of the acquisition by the Governor and Council of State of North Carolina. The Superior Court sustained the demurrer on this ground but did not dismiss it, and this court affirmed the action of the Superior Court.

[11]　Where it is determined on appeal that a demurrer to a petition in condemnation proceedings should have been sustained, the petitioner may apply for leave to amend the petition under the provisions of G.S. 1-131. *Gastonia v. Glenn*, 218 N.C. 510, 11 S.E. 2d 459.

[12, 13]　We are of the opinion and so decide that the complaint in the case under consideration alleges a defective statement of a good cause of action but because of the admissions in the answer, it cannot be attacked by the defendants herein, or anyone else.

In the case now under consideration, the defendants filed an answer admitting all of the allegations in the complaint except so much of paragraph five thereof "as alleges that the area appropriated by the Commission is described in Exhibit 'B' ", asserting further in the answer to paragraph five:

> "Exhibit 'B' purports to show the existence of certain streets within the boundaries of the highway right-of-way, whereas, in fact, no such streets exist. The Commission has appropriated the entire area within the northerly and southerly boundaries of the proposed highway delineated on the map attached to Exhibit 'B' and the plaintiffs are entitled to be compensated for the entire area taken."

Thereafter, in an amended answer the defendants amended this paragraph five, in part, to read that "no such streets exist as dedicated streets."

Thus, the defendants in this case, having admitted the power of, the fact of, and the necessity of the exercise by the State Highway Commission of the power of eminent domain, cannot be heard now

to deny the same in this case. It is also shown, by an addendum to this record, that the defendants have heretofore petitioned the court for payment of and have received the sum paid into court by the State Highway Commission as its estimate of just compensation. In the case of *City of Durham v. Bates*, 273 N.C. 336, 160 S.E. 2d 60, which was a proceeding brought by the City of Durham under the provisions of Article 9 of Chapter 136 of the General Statutes, Justice Branch said, "Upon accepting the benefits under the statute, defendants are precluded from attacking the statute, the jurisdiction of the court to enter the order putting plaintiff in possession of the property, or the failure of the plaintiff to strictly comply with the provisions of the statute which defendants attack."

Defendant appellants in their brief assert that there are seven questions presented on this appeal.

[14]    The first question is: Did the trial court err in refusing to permit the witness M. H. Matthis to testify concerning and use defendant's exhibit #3 to illustrate to the jury the effect the construction of the highway would have upon the planned development of the property of defendants? The answer to this question is "no". The defendants have based this question on the assumption that there was an existing subdivision. Defendants raise this question upon assignments of error one and two, which are based upon twelve exceptions. On page nineteen of the record defendants' exhibit #3 was "offered and received into evidence for purposes of illustration." Defendants' exceptions one and two as brought forward in their brief do not refer to defendants' exhibit #3 as they contend but to the offering into evidence of defendants' exhibit #5. The witness testified that exhibit #5 was the same map as defendants' exhibit #3 with the exception that different areas thereon were indicated by various colors. Even if the defendants in their brief meant to refer to defendants' exhibit #5, the exclusion thereof was not prejudicial error. The other exceptions brought forward in defendants' brief relating to these assignments of error numbered one and two are to the sustaining by the judge of objections to questions concerning the taking or damage to projected or potential building lots in a proposed subdivision of the 17.77-acre tract of land owned by defendants. They are all overruled. All except three of these exceptions were taken to objections made to questions asked by defendants out of the presence of the jury.

The evidence tended to show that the defendants had made maps of the 17.77-acre tract through which the highway was placed. These maps had not been recorded. The 17.77-acre tract was shown on the

maps as Section Five and Section Six, Montclair Subdivision. No lots shown on these maps had been sold. No stakes had been put in the ground. The property had not been actually subdivided on the ground. This 17.77-acre tract was a part of an original 30.5-acre tract, part of which had theretofore been subdivided and sold by the defendants. The only tangible improvements located on this 17.77-acre tract were some dirt hauled thereon, a sewer line extending through it to serve an earlier development of the defendants, and some undedicated rough roads or streets which had been cut therein.

Defendants in their answer deny the existence of any streets within the boundaries of the highway right-of-way.

Defendants make contradictory contentions. On the one hand, they assert that the streets shown on the proposed subdivision of the 17.77-acre tract are owned by them, and they contend that they are entitled to compensation for the area included in Fleming Street which they contend was not dedicated and did not exist as a public street. On the other hand, defendants contend that they are entitled to compensation on the basis of subdivided building lots fronting on this non-existent street.

We are of the opinion and so decide that inasmuch as the defendants had not dedicated any streets in the proposed subdivision, had not sold any lots therein, and had not caused the proposed maps thereof to be recorded, this is at most a proposed subdivision and not one which affects the unity of the land. It is a subdivision on paper and in the minds of the defendants. It can be changed or done away with by the simple act of destroying the paper map. *Barnes v. Highway Commission,* 250 N.C. 378, 109 S.E. 2d 219; see also 6 A.L.R. 2d 1197.

[15]   The second and fourth questions raised by the defendants relate to the trial court's refusal to admit evidence of the witnesses M. H. Matthis and Roger Mann concerning the cost of completing the development and the extent of other efforts made to develop and sell a portion of the 17.77-acre tract. The assignments of error cited and the exceptions relied on relate to evidence tending to establish the cost of "completing the development" of defendants' property and tending to establish that the defendants had given an option to Harold L. Jackson on all of the lots in the proposed subdivision, as shown on defendants' exhibit #1 in Section Five.

This option was dated 1 August 1962 and described the property as follows: "Being Lots Nos. 1 through 22 upon a plat entitled Section Five, Montclair Subdivision, prepared by L. M. Phelps, R.S., in February 1962, and *to be recorded* in the Wilson County

Registry." (emphasis added) The option then provides for a specified price for each of the lots. To have admitted it in evidence would have been error. This "option" was dated and, in fact, the defendant Matthis testified that the defendants purchased the land, after the defendants were aware that there was to be a highway through the area. In fact, the defendant Matthis testified that they purchased the land after they knew of the planned highway through there. The record does not show that this option was recorded. The map was not recorded. None of the lots shown on the map were sold.

In response to a question as to whether Harold Jackson exercised his option, Mr. Matthis would have answered:

"He asked for a deed, *but we told him he had better get his building permit — get that straightened out first*, to be sure that he would want the deed. Since they didn't give him a useable building permit, he felt the lots were not worth anything to him, so we did not give him a deed to them." (emphasis added)

From this answer, it appears that perhaps Mr. Matthis was solicitous for Mr. Jackson's welfare in his concern that Mr. Jackson knew what he was doing in his effort to purchase two of the lots shown only on an unrecorded map. Upon being asked why he had never recorded the map of Section Five of Montclair Subdivision, which is defendants' exhibit #1, Mr. Matthis would have further replied:

"Because — We had it right ready to record. If we had recorded it, we would have been giving up our rights to collect damages — certain part of the damages from the highway right-of-way."

It is readily apparent from the above that there was no existing subdivision but only plans for one. It is also apparent that the defendants were keeping control over their property as a single unit in order to collect damages from the Highway Commission for the condemnation of the right-of-way.

The validity of the option is not properly before us. We do not pass upon the question of whether the option, which refers only to numbered lots on an unrecorded map, contains a sufficient description of the lots referred to. We are of the opinion and so decide that the trial court did not commit prejudicial error in excluding the option and the evidence of the witness M. H. Matthis as to the option and the negotiations thereunder. It was not prejudicial error to exclude the evidence of the witness Roger Mann as to the additional cost of the development of the property because of the presence of the highway. The court permitted the witness M. H. Matthis to testify as to the highest and best use of the property before and after the taking. It

was not proper to allow testimony concerning the effect of the appropriation upon proposed lots.

> "The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all of the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed.
>
> .   .   .
>
> It is proper to show that a particular tract of land is suitable and available for division into lots and is valuable for that purpose, but it is not proper to show the number and value of lots as separated parcels in an imaginary subdivision thereof. In other words, it is not proper for the jury in these cases to consider an undeveloped tract of land as though a subdivision thereon is an accomplished fact. Such undeveloped property may not be valued on a per lot basis. The cost factor is too speculative. . . ." *Barnes v. Highway Commission, supra;* see also *Highway Commission v. Conrad,* 263 N.C. 394, 139 S.E. 2d 553.

The third question set out in defendants' brief as arising on their assignments of error eleven and twelve is: "Did the trial court err in refusing to permit the witness Carlos Williams to testify as to his opinion of the value of the subject property before the taking?"

[16]    The witness Carlos Williams testified that he lives in Fayetteville, that he is in the real estate sales and appraisal business and has been for seventeen years, and that the first time he ever went upon the property in question was about 23 November 1966. At that time the highway was there and had already been paved. That "Dr. Matthis told me the changes that had been made in the property by virtue of the highway taking the property. He gave me a picture of the way it was before the highway did any work in there. He told me that it was a continuous grade just like the existing subdivision that this property joined. *The picture in my mind that I assumed when I was told* is that it would have been just a continuous grade similar to the subdivision that's now existing there adjacent to it." (emphasis added) . . . "I also made an investigation as to land sales of similar property in the area, and visited the area in which such sales were made." This witness was permitted to give his opinion as to the highest and best use of the property and also that it was suitable for residential use but the court sustained

the objection to the following question propounded to the witness: "Mr. Williams, do you have an opinion satisfactory to yourself as to the fair market value of the property in litigation before the taking of the highway right-of-way in September, 1963, and before the highway was constructed?"

The witness, if permitted to answer, would have said, "$112,800.00," which would not have been responsive to the question. We do not know from this record, but we will assume that he would have answered it "yes," if his answer had been responsive to the question.

We are of the opinion and so decide that under the circumstances here, the trial judge did not commit error in excluding the testimony of the witness Williams as to the value of the land before the taking. The witness lived in Fayetteville; the property was in Wilson. The date of the taking was more than three years prior to the time the witness first saw the land. A highway embankment and a highway had been constructed across the land before the witness saw it. The record does not disclose what changes or improvements, if any, had occurred in the entire area surrounding the land in question during those three years.

> "An objection has been made to the testimony of witnesses directed to the measure of damages caused by the fire: That they were not qualified to express an opinion because they did not testify that they saw the premises *immediately* before and *immediately* after the fire. (emphasis added)
>
> We are of the opinion that the evidence disclosed to the jury that both views, 'before and after,' were taken with sufficient nearness to the burning as to make the evidence competent; Beam saw the house a few days before the fire, and what remained of it two or three days after it. 'Immediately,' in the strict sense, is not essential. It is a question of reasonable nearness." *Crouse v. Vernon*, 232 N.C. 24, 59 S.E. 2d 185.

[17]    There were two hypothetical questions asked the witness Carlos Williams, the answers to which were excluded by the judge, and to each an exception was taken. The witness was not tendered as an expert, either then or later. The witness had not been found to be an expert when these two questions were asked. The judge, after all the evidence was in, apparently on his own motion, as appears in the record just before the charge of the court, found "that Mr. Carlos Williams is an expert real estate appraiser." After this finding, no question was asked the witness.

Defendants contend in their brief that the witness was an expert

witness and should have been permitted to answer these hypothetical questions but defendants had not tendered him as such, and the court had not so found. In Stansbury, N. C. Evidence 2d, § 133, the principle of law applicable is succinctly stated as follows: "On objection being made, the party offering a witness as an expert should request a finding of his qualification; if there is no such request, and no finding or admission that the witness is qualified, the exclusion of his testimony will not be reviewed on appeal." In the case of *LaVecchia v. Land Bank*, 218 N.C. 35, 9 S.E. 2d 489, the Supreme Court held that "(t)he competency of a witness to testify as an expert is a question primarily addressed to the sound discretion of the court, and his discretion is ordinarily conclusive." In the case now under consideration, there is no abuse of discretion asserted, and none has been shown. See also *State v. Moore*, 245 N.C. 158, 95 S.E. 2d 548; *Hardy v. Dahl*, 210 N.C. 530, 187 S.E. 788; and *Pridgen v. Gibson*, 194 N.C. 289, 139 S.E. 443.

Defendants' fifth and sixth questions relate to the charge of the court. The defendants' assignments of error to the charge of the court as to the measure of damages and the requirements of G.S. 1-180 are without merit. The charge of the court correctly and accurately stated and applied the law arising on the evidence given in the case.

Defendants' seventh question is: "Did the court err in refusing to set aside the verdict on the grounds that it was a quotient verdict?"

A quotient verdict is one that is "rendered in a civil action in pursuance of an agreement by the jurors to accept one-twelfth of the aggregate amount of their several estimates of the measure of damages, without the assent of their judgment to such a sum as their verdict." 53 Am. Jur., Trial, § 1030, p. 710.

[18, 19] It is well settled that a quotient verdict by jurors is invalid and not permitted. *Daniel v. Belhaven*, 189 N.C. 181, 126 S.E. 421; 8 A.L.R. 3d, Quotient Verdict, § 2, p. 340. It is equally well settled that in order to impeach the verdict of a jury, the evidence must come from sources other than the jurors themselves. *Johnson v. Allen*, 100 N.C. 131, 5 S.E. 666; *Baker v. Winslow*, 184 N.C. 1, 113 S.E. 570; *State v. Hollingsworth*, 263 N.C. 158, 139 S.E. 2d 235.

[20] The defendants moved for a new trial on the grounds that the verdict returned by the jury was a quotient verdict. The following occurred relative to this motion:

"MR. MORGAN: Your Honor, we move to set the verdict aside — and I will have to give you some supporting evidence on it

— on the ground that the verdict is a quotient verdict. The papers I just handed to Your Honor were found on the jury room table, immediately after they walked out of the room yesterday afternoon, and handed to the Court Reporter. Your Honor, there are three cases under North Carolina law:

*Vandiford v. Vandiford*, 215 N.C. 461; *Bartholomew v. Parrish*, 186 N.C. 81; *Daniel v. Town of Belhaven*, 189 N.C. 181.

In those three cases the Supreme Court has held that a quotient verdict is not a proper verdict. I realize to get this matter properly before the Court we will have to furnish Your Honor some additional evidence as to this matter.

THE COURT: Well, did you say that you yourself found this in the jury room?

MR. MORGAN: Yes, sir. Immediately after the jury was discharged, I walked in the jury room. Those were the papers lying on top of the table. I brought them out and gave them to the Court Reporter and asked that she preserve them.

THE COURT: All right, sir. Well, I'll let the record show that you said that you found them in the jury room after the verdict, and I accept your statement that you did as a fact — If that's what you have reference to —

MR. MORGAN: That's what I have reference to. I, frankly, don't know, Your Honor, whether that has to be sworn testimony —

THE COURT: Well, I'm accepting your statement as a statement of fact. I don't question that —

MR. MORGAN: Well, I picked them up myself. And I think if Your Honor will look at those figures there, it is obvious that it is a quotient verdict. There are twelve figures written down, and 12 divided into it, and the exact verdict that came down is the figure written down. So, rather than it being a verdict arrived at from the evidence, and after a consideration of all the evidence and being a unanimous verdict, it is obvious it is a compromise verdict.

THE COURT: Well, I will let this go in the record, and I overrule your motion on that ground."

Each of the three cases cited by the defendants is distinguishable from the case under consideration. In *Wannamaker v. Traywick*, 136 S.C. 21, 134 S.E. 234, the facts are almost on all fours with the case under consideration. In this South Carolina case, within ten

minutes after the verdict was rendered, several persons walked into the room where the jury had been deliberating, and there found a sheet of paper on top of the desk in that room. This sheet of paper contained twelve items of figures, ranging from 1,000 to 3,000, placed in column form. Beneath this column of figures were the figures 21,000, the total of the figures in the column; this last sum had been divided by twelve, giving as the result the quotient of 1,750. The verdict was $1,750. A witness testified that the figures on this sheet of paper were in the handwriting of one of the jurors, a Mr. Ulmer. The South Carolina Supreme Court in that case held that the party moving for a new trial had the burden of establishing that a quotient verdict was rendered, and said:

> "Jurors are presumed to do their duty, and there is a presumption that they have regarded their oaths. The court would not be justified, except upon a clear showing, to hold contrary to these presumptions. If the verdict was rendered in pursuance of the plan outlined by us hereinbefore, it is not a quotient verdict and is not illegal, as is distinctly held in the authority cited — Ruling Case Law. There, it is expressly stated:

> 'Thus where one of the jurors of his own accord sets down the estimates of the others and ascertains the average sum and proposes the result as the amount of the verdict, which they assent to, it is no ground for objection to the verdict.'

> It is our opinion that the appellant has failed to show that the circuit judge committed error in overruling the motion for a new trial."

"Although there is some authority in support of the position that evidence of papers and figures establishing the jurors' use of the quotient process is sufficient, in itself, to raise the presumption that the quotient process has been improperly used in connection with an antecedent agreement to be bound by it, and that an invalid quotient verdict has therefore been rendered, *the clearly prevailing view appears to be to the contrary and to reject such a presumption.*" (emphasis added) Annot. 8 A.L.R. 3d 335, 367 (1966).

> "In order to have a verdict in either a civil or criminal case invalidated as a quotient verdict, it is, as a general rule, insufficient to show merely that the jurors used the quotient process at some stage of their deliberations and that their verdict corresponded exactly or approximately to the amount of the quotient. It is generally considered vital to show also that the jurors agreed, prior to obtaining the quotient, that they would be

bound by it and accept it as their verdict." Annot. 8 A.L.R. 3d 335, 349 (1966).

In the case of *Collins v. Highway Commission,* 240 N.C. 627, 83 S.E. 2d 552, it is said:

"While the amount of the verdict may prompt the surmise that it was a quotient verdict, it alone is insufficient to compel the conclusion, as a matter of law, that it was in fact a quotient verdict."

Applying these principles of law to the case under consideration, we conclude that the trial judge did not commit error in refusing to set aside the verdict on the grounds that it was a quotient verdict.

We have carefully examined all of the assignments of error and the exceptions brought forward in defendants' brief and are of the opinion that the defendants have had a fair trial, free from prejudicial error.

No error.

BROCK and PARKER, JJ., concur.